CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 16, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **LEE MALVO,** | ) |
| Plaintiff, | ) Case No. 7:23CV00535 |
| v. | ) **MEMORANDUM OPINION** |
| **DIRECTOR HAROLD CLARKE, ET AL.,** | ) By Robert S. Ballou |
| Defendants. | ) United States District Judge |

This civil rights case under 42 U.S.C. § 1983 is before me on the defendants' Motion to Dismiss, and the pro se plaintiff, Lee Boyd Malvo, has responded, making the matter ripe for disposition. The defendants have filed a Partial Motion to Dismiss as to Claims 1 and 4 and a Partial Answer as to Claims 2 and 3. Malvo has responded to the motion, making it ripe for consideration. After review of the record, I **GRANT** the defendants' partial motion to dismiss.

I. BACKGROUND.

Malvo's claims arose while he was confined in the Protective Custody Unit ("PCU") at Red Onion State Prison ("Red Onion"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). He alleges the following sequence of facts on which he rests his claims.

In March 2022, staff at Red Onion placed Inmate A. Taylor in the PCU. Malvo alleges that Taylor was "a known, active Blood Gang Member," with a history of repeated assaults on other inmates while in VDOC custody. Compl. 10, ECF No. 1.[1] Taylor had allegedly been convicted of assault and battery against PCU Inmate Adib Makdessi in 2003 in Virginia Beach, and a judge had issued a keep separate order based on Taylor's gang ties. Malvo spoke with Red

---

[1] References to page numbers of documents in the record indicate the page numbers assigned by the Court's electronic docketing system.

Onion Investigator A. Bentley, who said that no one on his staff had been consulted before Taylor was assigned to the PCU.

Malvo also filed grievances about Taylor's presence in the PCU. Staff moved Malvo to a different tier, but inmates from both tiers were "mixing," *id.* at 11, which allegedly gave Taylor access to Malvo. In April 2022, Malvo spoke to Warden Rick White about the risk Taylor purportedly posed in the PCU, about Malvo's application for transfer under the Interstate Compact, and about ways he could be kept safe until his transfer was approved. White reassured Malvo about these concerns. But White did not remove Taylor from the PCU until May or June of 2022, after Taylor got into an altercation with another inmate in staff's presence. Malvo did not receive an interstate transfer.

In June 2022, Malvo and Makdessi, along with other inmates, accessed VDOC Operating Procedure ("OP") 401.1, the Security Post Order for the PCU and after reading this document, they and other PCU inmates became aware of many policies that the defendants and other staff were allegedly violating. Malvo alleges that he and Makdessi were singled out for retaliation for accessing this document. On June 21, 2022, Malvo allegedly saw Unit Manager Larry Collins slam Makdessi (in handcuffs) to the ground and drag him to another housing unit. Compl. Exhibits, at 39-40, ECF No. 1-1. Sergeant Thornsberry was present but allegedly turned off his body camera. On June 22, 2022, Malvo contacted the VDOC Special Investigations Unit ("SIU") about this assault. Thereafter, Sergeant ("Sgt.") Taylor told Malvo he "was going to pay for contacting SIU against" Collins. Malvo Ex. J, at 2, ECF No. 20. On August 13, 2022, just

ten days before Malvo's parole hearing, Sgt. Taylor wrote a disciplinary charge against Malvo for refusing to work[2] which Malvo contends was a bogus charge.

I liberally construe Malvo's Complaint as alleging four claims against the defendants:

1. Supervisory liability against Defendant Clarke, Director of the VDOC, for the constitutional violations against Malvo in Claims 2, 3, and 4.

2. Defendants Collins and Thornsberry intimidated and threatened Malvo on or about June 21, 2022, in retaliation for his exercise of First Amendment rights. Defendants Collins, Thornsberry and White are also liable under supervisory liability.

3. Defendant Taylor issued a false charge against Malvo on or about August 13, 2022, in retaliation for his exercise of First Amendment rights. ECF No. 1, at 3-4, ¶ 2; at 9, ¶ 7 and at 12. Defendants White and Collins are also liable under supervisory liability.

4. Defendants failed to protect Malvo from Inmate Taylor in violation of the Eighth Amendment. ECF No. 1, at 4-5, ¶ 1 and at 10-11. Defendants King and White are also liable under supervisory liability.

Malvo amended his complaint on September 20, 2023, to seek only injunctive relief, nominal damages, and costs. Dkt. 6.

## II. DISCUSSION

### A. The Motion to Dismiss Standard

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint." *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[3] In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir.

---

[2] According to an officer's response on one of Malvo's exhibits, this charge was dismissed on August 17, 2022, before his parole interview/hearing, and the parole report presented for that proceeding indicated that Malvo had been charge-free since September 4, 2020. Compl. Exhibits, at 9, ECF No. 1-1.

[3] I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion, unless otherwise noted.

2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* "[T]he court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements." *Langford*, 62 F.4th Cir. at 124.

Malvo presents his claims under the Eighth Amendment and § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his *constitutional* rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). Liberal construction, however, does not allow me to formulate constitutional claims for Malvo based on conclusory statements alone. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not . . . without limits," and a reviewing court "cannot be expected to construct full blown claims from sentence fragments"); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) ("A pro se plaintiff still must allege facts that state a cause of action.").

B.  Claim 1: Director Clarke.

Defendant Clarke, former VDOC Director, moves to dismiss the claims against him because Malvo does not allege facts showing his personal involvement in any constitutional violation.  I agree.

It is well established that supervisory or administrative officials cannot be held automatically liable for constitutional violations committed by their employees.  Liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights.  *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017).  "The doctrine of respondeat superior has no application under this section."  *Id.*

Malvo also fails to state any claim against Clarke based on his supervisory role over Malvo's complaints about events in the PCU.  To state a claim against Clarke for supervisory liability, Malvo must allege facts that demonstrate (1) that Clarke knew his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) that Clarke's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between Clarke's inaction and the constitutional injury Malvo claims.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Without showing Clarke's personal involvement in this way, Malvo cannot state an actionable, civil rights claim against him for the constitutional violations alleged in Claims 2, 3, and 4.  *Iqbal*, 556 U.S. at 676.

Malvo's supervisor liability claims against Clarke are largely constructed of generalized assertions with no factual support connecting them to the events related to Malvo's claims about specific occurrences in the PCU at Red Onion in 2022.  He asserts in conclusory fashion that Clarke knew from years of experience and past and present lawsuits from other litigants that long

terms of solitary confinement were harmful to inmates. Malvo contends that Clarke "has created a hostile environment . . . through his [unspecified, undated] policies and directives that no prisoner shall prev[ai]l with gr[ie]vances and lawsuits" asserting policy violations, but Malvo offers no facts to support this assertion. Compl. 6, ECF No. 1.

Malvo claims that he wrote to Clarke about his PCU complaints. A purported copy of this letter to Clarke is attached to the Complaint as Exhibit E. Compl. Exhibits, at 39-40, ECF No. 1-1. After a brief reference to a prior letter from someone else about unidentified concerns regarding the PCU, Malvo cites events on June 21, 2022, when Thornsberry allegedly turned off his body camera, cuffed Malvo and Makdessi, and then Collins allegedly "slammed [Makdessi] repeatedly into the wall." *Id.* at 39. The letter states that Collins then demanded, "where is my Security Post Order? I'll fuck you up — if you don't give it to me!" *Id.* Malvo says he was then "locked in a dirty shower in C5 for 3 ½ hours." *Id.* In the letter to Clarke, Malvo writes:

> First, the failure to protect led to placement of an active gang member A. Taylor in the PC Pod, and now it's [Collins] and his staff targeting, retaliating and assaulting us. OP 401.1 Security Post Order was placed in the "Common Area" of the Pod. It was read by over 40 prisoners for over a week. Yet only Makdessi and [Malvo] were targeted?

*Id.* at 40. The letter is not dated, but it was clearly written after the Post Order incident, which occurred in June 2022, weeks after Inmate Taylor was removed from the PCU. Thus, I cannot find that details in this letter put Clarke on notice, before Malvo's current claims arose, of any specific and pervasive risk that PCU inmates would suffer from either gang member pod mates or retaliatory actions from officers.

In short, Malvo has failed to plead sufficient facts to support a plausible supervisory liability claim against Clarke. The complaint does not contain facts that before the events of Malvo's claims occurred, Clarke knew of pervasive or unreasonable risks that staff would not

protect PCU inmates from violence or that staff would retaliate against them for exercising constitutional rights. Indeed, Malvo presents no facts that Clarke received or read the letter in the record. Moreover, Malvo fails to plead an "affirmative causal link" between any action or inaction by Clarke and Malvo's other current claims. *Shaw*, 13 F.3d at 799. I will grant the Motion to Dismiss as to Claim 1 and direct the Clerk to terminate Clarke as a party to this case.

C. Claim 4: Failure to Protect.

It is well established that prison officials have a duty to take "reasonable measures to guarantee inmate safety" and "to protect prisoners from violence at the hands of other prisoners." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). Yet, not every inmate-on-inmate assault "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To prove a Section 1983 claim against officials for failure to protect, a prisoner plaintiff must establish: (1) objectively, he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) subjectively, the defendant prison official had a "sufficiently culpable state of mind," one of "deliberate indifference." *Id.* Under the first prong of this standard, to succeed on a failure-to-protect claim for damages, a plaintiff must show that the harm he suffered was objectively serious. *Williams v. Shearin*, No. 12–cv–1314, 2013 WL 2295677, at *7 (D. Md. May 23, 2013). The second, subjective prong of the analysis requires evidence of "more than ordinary lack of due care for the prisoner's interests or safety," and "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. More specifically, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

An inmate may prove deliberate indifference through direct or circumstantial evidence; "[d]irect evidence of actual knowledge is not required." *Makdessi*, 789 F.3d at 133. The plaintiff may satisfy the deliberate indifference element with evidence that the challenged circumstances created a "substantial risk" of harm that "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Id.* Even without direct evidence, a risk of "injury might be so obvious that the factfinder could conclude that the [official] did know of it because he could not have failed to know of it." *Id.*

On the other hand, "merely negligent or careless" supervision of inmate activity, without more, cannot result in liability under the deliberate indifference standard. *Strickland v. Halsey*, 638 F. App'x 179, 187 (4th Cir. 2015). Similarly, the mere fact that officials knew of an inmate's history of violence and past threats to harm others is not dispositive on the issue of deliberate indifference. *Id.* at 187. "The relevant question is whether the Defendants subjectively believed [the assailant inmate] posed a substantial risk of serious harm to other inmates, not whether they simply knew" he had a history of violence or had made threats. *Id.* at 185-86. Put another way, each official "must actually have drawn the inference" that his conduct uniquely exposed the plaintiff to a specific risk distinct from the general risks of violence by other inmates. *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997).

Malvo's factual allegations are insufficient to support a failure to protect claim against defendants White, King, Collins, Thornsberry, or Taylor. First, Malvo fails to state facts showing that Collins, Thornsberry, or Taylor had any personal involvement in the failure to protect claim concerning placement of inmate Taylor in the PCU. *Iqbal*, 556 U.S. at 676 (noting

plaintiff must show that each "defendant, through the official's own actions, has violated the Constitution").

Second, Malvo does not show that he suffered any serious physical or emotional injury because of actions or inactions of any of the defendants. Absent any evidence of injury, Malvo has failed to show that the alleged actions of the defendants caused a violation of his rights that was objectively serious enough to rise to constitutional proportions. *Williams*, 2013 WL 2295677, at *7; *Toomer v. Baltimore City Det. Ctr.*, No. CIV.A. DKC 12-0083, 2014 WL 4678712, at *3 n.5 (D. Md. Sept. 18, 2014) (explaining "[t]o state a failure to protect claim for damages, the inmate must show a serious physical injury") (citing *De Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)).[4]

Malvo mentions talking to defendant White about inmate Taylor while that inmate was assigned to the PCU. That conversation allegedly occurred in April 2022 and concerned Malvo's desire to transfer under the Interstate Corrections Compact. By that time, inmate Taylor had already been moved to a different tier than Malvo for a time, although Malvo alleges that inmates from the two tiers were allowed to intermingle in unspecified ways. Even Malvo's account about his discussion with White, however, does not show that White or any other defendant knew of and disregarded a substantial risk that inmate Taylor posed toward Malvo. "[M]ere knowledge of [another inmate's] threats [toward the plaintiff] does not constitute deliberate indifference." *Strickland*, 638 F. App'x at 187.

Moreover, even if Malvo could show that he suffered some injury from being in PCU with inmate Taylor for a time, he does not state facts showing that any defendant acted with

---

[4] Any injunctive relief Malvo seeks regarding A. Taylor's placement in the PCU is moot, since Malvo's allegations indicate that A. Taylor was removed from the PCU before the filing of this lawsuit. *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (holding that case is moot when circumstance gives plaintiff "the relief he or she sought to obtain through the claim").

deliberate indifference to his safety. Alleging that he was assigned to the same tier of the PCU with a "known, active Blood Gang Member" is not sufficient to plausibly suggest that any of the defendants "actually knew of and disregarded a substantial risk of serious injury" that this situation posed to Malvo. *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004); *Gomez v. Davis*, No. 7:20-CV-00726, 2022 WL 777064, at *5 (W.D. Va. Mar. 11, 2022) ("Merely alleging that he was housed with a gang member is insufficient to plausibly suggest that any of the named defendants actually knew of and disregarded a substantial risk of serious injury."); *Sutton v. Johnson*, No. 7:10CV00070, 2010 WL 1813791, at *2 (W.D. Va. Apr. 30, 2010) (finding that inmate's "alleged membership in a gang known for violence and his recent segregation sentence for unidentified violence did not put [defendant officer] on notice that [inmate] posed a specific risk of harm to his cell mates or to [the plaintiff] in particular"); and *Smolen v. Brown*, No. 18-CV-7621 (KMK), 2020 WL 1233762, at *4 (S.D.N.Y. Mar. 13, 2020) (holding that "the bare allegation that [the plaintiff's] attacker was a known violent gang member" was insufficient to establish deliberate indifference necessary to sustain failure to protect claim).

I find that Malvo has not stated a plausible constitutional claim against any defendant for failing to protect him from Inmate Taylor. I also find no supervisory liability claim against any defendant. *Shaw*, 13 F.3d at 799 (requiring showing causal link between supervisor's alleged inaction and constitutional injury suffered by the plaintiff). Therefore, I grant the partial motion to dismiss as to Claim 4.[5]

### III. CONCLUSION.

For the reasons stated, I will grant the Partial Motion to Dismiss and dismiss all claims against Clarke and King and all failure to protect or related supervisory liability claims as to

---

[5] Defendant King as a party because he is not mentioned in the claims now remaining before the court.

defendants White, Collins, Taylor, and Thornsberry. The case will go forward as to these defendants regarding Malvo's Claims 2 and 3. A separate Order will issue with this Memorandum Opinion.

                                      Enter: September 15, 2025

                                      /s/ Robert S. Ballou

                                      Robert S. Ballou
                                      United States District Judge