CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

July 15, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **LEE MALVO,** | ) | |
| **Plaintiff,** | ) | **CASE NO. 7:23-cv-00535** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WARDEN RICK WHITE, et al.,** | ) | **By: Robert S. Ballou** |
| **Defendants.** | ) | **United States District Judge** |

Lee Malvo, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to

42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before me on the

Defendants' separate Motions for Summary Judgment. After review of the record, including

video footage, I conclude that the Defendants' Motions must be granted as a matter of law.

Furthermore, as no amount of additional evidence can cure the deficiencies in Malvo's claims

and the record as a whole could not lead any rational trier of fact to find in favor of Malvo, the

claims are dismissed with prejudice.

## I.    BACKGROUND

### A.  Procedural history

On August 17, 2023, Malvo initiated this lawsuit, asserting that the Defendants' failed to

protect him in violation of his Eighth Amendment rights and two incidents of retaliation in

violation of his First Amendment rights. The named Defendants included former Director of the

Virginia Department of Corrections (VADOC), Harold Clarke, former Chief of Security at Red

Onion State Prison (Red Onion), C. King, Red Onion's Warden, Rick White, Red Onion's

Protective Custody Unit Manager (UM), Larry Collins, and Red Onion prison officials, Sargeant

Thornsberry and Sargeant Taylor.

On February 15, 2024, Defendants filed a Motion to Dismiss, with Malvo's response received on April 8, 2024.  By Memorandum Opinion and Order issued on September 16, 2025, the Court dismissed Claims 1 (supervisory liability of Defendant Clarke for Claims 2, 3 and 4) and 4 (failure to protect claims) in their entirety pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6), and terminated Defendants Clarke and King from the lawsuit.  Dkt. 50 and 51.  On May 28, 2026, remaining Defendants Collins,[1] and Taylor, Thornsberry and White[2] filed separate Motions for Summary Judgment, to which Malvo responded.  Although Malvo attempts to relitigate portions of Claims 1 and 4 in his response, the Court will only address the remaining Claims and Defendants.  The Courts notes that on June 26, 2026, Malvo filed a Notice of Appeal to the Fourth Circuit regarding Orders entered by Magistrate Judge Sargent related to this lawsuit.

### B.  Remaining claims

Claims 2 and 3 remain which assert causes of action for retaliation during his time at Red Onion.  Specifically, Malvo alleges the following:

> **Claim 2:** Defendants Collins and Thornsberry intimidated and threatened Malvo on or about June 21, 2022, in retaliation for his exercise of First Amendment rights.  Defendants Collins, Thornsberry and White are also liable under supervisor liability.

> **Claim 3:** Defendant Taylor issued a false charge against Malvo on or about August 13, 2022, in retaliation for his exercise of First Amendment rights.  Defendants White and Collins are also liable under supervisory liability.

---

[1] In support of his Motion for Summary Judgment, Defendant Collins submitted affidavits from L. Collins and B. Taylor.

[2] The Defendants offer affidavits in support of their Summary Judgment Motion from T. Thornsberry, L. Collins, B. Taylor, and C. Meade.

### C.  Relevant facts

Malvo's claims arose while he was confined in the Protective Custody Unit at Red Onion.  He alleges the following sequence of events on which he rests the remainder of his claims (Claims 2 and 3).

*Facts related to June 21, 2022 incident*

In June 2022, Malvo and another inmate, Adib Makdessi were handed VADOC Operating Procedure 401.1, the Security Post Order for the Protective Custody Unit by other inmates in the Protective Custody Unit.  Malvo states that he "read [the Post Order] and learned how policies were being violated by [Red Onion] staff."  Dkt. 1.  He asserts that the Post Order "was read by many inmates and was in the common area for over a week, yet only [Malvo] and Adib Makdessi were singled out for retaliation."  *Id*.  According to Malvo, Protective Custody UM Larry Collins "has created a hostile environment where both he and the staff under his command routinely retaliate against prisoners through harasoment [sic], destruction of property, issuing bogus charges, daily shakedowns consecutively for weeks and assaults" in order to "silence prisoners who complain about the conditions and risk of significant harm."  *Id*.  Malvo further explains that "[u]nder OP401.1 Security Post Order: Protective Custody signed by UM Collins and his staff, Defendant Collins violated and undermined these policies and procedures – creating the conditions that pose a significant risk of harm to the Plaintiff and all other prisoners" in the Protective Custody Unit.  *Id*.

Malvo's primary complaint against Defendants Collins and Thornsberry revolves around his different versions of the events involving an alleged assault on Inmate Makdessi on June 21, 2022.  Malvo submitted separate letters addressed to Director Clarke, Chief of Operations Robinson and Mr. Ford, each dated June 22, 2022, Informal Complaint number ROSP-22-INF-

01389, submitted on June 23, 2022, and Regular Grievance number ROSP-22-REG-00177,

submitted on June 29, 2022.  In the letter addressed to Director Clarke, Malvo states

> On Tuesday, June 21, 2022 between 12:15 pm – 4 pm Sgt. Thornesberry [sic] entered C6 Pod, turned off his body-camera and with two officers handcuffed and [Malvo] and Adib Makdessi and escorted [Malvo and Makdessi] to the Sgt's office.  At 12:30 pm Unit Manager Larry Collins entered, made a beeline for Makdessi, slammed him repeatedly into the wall.  [Collins] then half-dragged/half pushed Makdessi into C4 Pod.  Upon returning he and Sgt. Thornesberry [sic], whose body-camera was still turned off, sat me in the Sgt's office.  UM Collins then said: Where is my Security Post Order?  I'll fuck you up – if you don't give it to me!"  [Malvo] was then locked in a dirty shower in C5 for 3 ½ hours."

*Id*.

In the letter addressed to Chief of Operations Robinson, Malvo states

> On Tuesday, June 21, 2022 at 12:15 pm Sgt. Thornesberry [sic] entered C6 Pod turned off his body-camera and with the help of two staff members handcuffed [Malvo] and Adib Makdessi.  [Malvo and Makdessi] were then taken to the Sgt's office, the officers were dismissed.  Makdessi and [Malvo] stood outside the Sgt's office until 12:30 pm when Unit Manager Larry Collins entered – made a beeline for Makdessi and slammed him repeatedly on the wall, screaming that he shut the fuck up.  [Collins] then half-dragged/half pushed Makdessi to C-410.
>
> Upon returning [Collins] sat me in the Sgt's office and threatened me.  Sgt. Thornsberry was present with his body camera turned off.  UM Collins asked [Malvo] "Where is [Collins'] Security Post Order?  I'll fuck you up – if you don't give it to me!
>
> OP 401.1 Security Post Order was in a file folder placed in the common area of the C6 Pod for over a week.  It was read by over 40 prisoners in the pod.  Yet the only two prisoners targeted for retaliation, assault and threats are two prisoners actively engaged in lawsuits.[3]…
>
> Sgt. Thornesberry [sic] turned off his body-camera for hours.  [Makdessi and Malvo] were locked in the filthy showers in C4 and C5 respectively for 3 ½

---

[3] At the time Malvo sent this letter, he had not yet filed this lawsuit, which was initiated on August 17, 2023.  The other cases that Malvo had pending with the Western District of Virginia had either already been closed or had not yet been filed during this timeframe. *Malvo v. Mathena*, 2:13-cv-00034 and *Malvo v. Mathena*, 2:13-cv-00035, both filed June 25, 2013 and closed on July 5, 2013; *Canada, et al. v. Clarke, et al.*, 7:14-cv-00566, filed October 16, 2014 and closed December 29, 2014; *Malvo v. Owens, et al.*, 7:25-cv-00643, filed September 11, 2025 and closed November 17, 2025.

hours.  The entire time they were doing this – the OP 401.1 Security Post Order file was sitting on the desk in the Sgt's office.

It can be seen on camera that between 12:15-4pm on 6/21/2022 that Sgt. Thornesberry [sic], Unit Manager L. Collins, CHADS Turner, and Assistant Warden Blivens [sic] were all present and aware of what had transpired.

*Id*.

In the letter addressed to Mr. Ford, Malvo states

On Tuesday, June 21, 2022 at 12:15 pm Sgt. Thornesberry [sic] entered C6 Pod, turned off his body-camera, and with the help of two c/os handcuffed [Malvo] and Adib Makdessi.  [Malvo and Makdessi] were then taken to the Sgt's office and the two c/os were dismissed.  At 12:30 pm as [Makdessi and Malvo] stood outside the Sgt's office, Unit Manager Larry Collins entered … made a beeline for Makdessi and repeatedly slammed him into the wall, screaming at Makdessi to: "shut the fuck up!"  [Collins] then half-dragged/half pushed Makdessi to C-4 Pod.

Upon returning [Collins] and Sgt. Thornesberry [sic], who still had his body-camera turned off, sat [Malvo] in the office.  Unit Manager Larry Collins threatened [Malvo]: "Where is [Collins'] Security Post Order?  I'll fuck you up – if you don't give it to me!

OP 401.1 Security Post Order was in a file folder placed in the "Common Area" of C6 Pod for over a week.  Over 40 prisoners read it.  Yet only [Malvo] and Makdessi were singled out for retaliation….

Sgt. Thornsberry turned of his body camera for hours, violating policy, while he and UM Collins threatened [Malvo].  Then [Malvo and Makdessi] were locked in the filthy showers in C4 and C5 respectively for 3 ½ hours.  The entire time they were doing this the 401.1 Security Post Order: Protective Custody Unit was sitting on the desk in the Sgt's office.

It can be seen on camera that between 12:15-4pm on 6/21/2022 Sgt. Thornsberry, UM L. Collins, CHAPS Turner, and Assistant Warden Blivens [sic] were all present and aware of what had transpired…

*Id*.

Malvo states in the Informal Complaint that on June 21, 2022, "UM Collins … threatened to beat [Malvo] up if [Malvo] didn't give [Collins] his Security Post Order." *Id*. Malvo further claims that the security documents were placed in the common area for over a week, but that

5

Malvo was "one of the two prisoners singled out for retaliation – locked in a dirty shower for hours." Dkt. 1. Malvo stated in his Regular Grevience, among other things, that "UM Collins assaulted Makdessi by slamming him into the wall while he was handcuffed … the retaliation, intimidation and coercion was made clear as [Malvo] stood in the hallway listening to UM Collins threaten Makdessi … Collins threatened [Malvo's] life – his actions of assaulting prisoner Makdessi while threatening him in [Malvo's] presence – was retaliation, intimidation and coercion." *Id.*

The allegation in the Informal Complaint regarding Defendant Thornsberry state that "Sgt. Thornsberry pulled [Malvo] out the cell to [Thornsberry's] office. Afterwards UM Collins along with Thornsberry, who turned his body-camera off, threatened to beat [Malvo] up if [Malvo] did not give [Collins] his Security Post Order." *Id.* Malvo further asserts in the Regular Grievance that "[t]here's a camera just below the window of the security booth pointing straight at Sgt Thornsberry's office. Sgt. Thornsberry purposely turned off his body camera in order to circumvent policy and hide that he and UM Collins threatened [Malvo's] life." *Id.* Following the alleged assault on Makdessi, Malvo filed several grievances related to the June 21, 2022 incident, including this lawsuit and various other unrelated complaints.

*Facts related to August 13, 2022 incident*

Malvo contends that at some point, Defendant Taylor "threatened to get [Malvo] for contacting the Special Investigative Unit" (SIU) related to Malvo's allegations about "witnessing UM Larry Collins assault on Adib Makdessi and threatening the safety of [Malvo]." *Id.* Malvo further contends that on "August 13, 2022, Sgt. Taylor gave [Malvo] a bogus 200 series Refusing to Work charge," which was also 10 days before Malvo's 2022 parole hearing. *Id.* Malvo concludes that Defendant Taylor issued the bogus charge on purpose 10 days before Malvo's

2022 parole board hearing and because of that one bogus charge, he was denied parole.  Both

Malvo and Defendants presented the parole board's decision letter as evidence.  Malvo also

submitted both an informal complaint and regular grievance regarding the bogus charge, which

was later dismissed prior to his parole board hearing (ROSP-22-INF-01980 and ROSP-22-REG-

00287).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  A movant is entitled to summary judgment

only if the record as a whole *could not* lead a rational trier of fact to find in favor of the non-

movant.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).[4]  On the other hand, where the

ultimate factual conclusions to be drawn are in dispute, summary judgment is not appropriate.

*Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).  A court may not resolve

disputed facts, weigh the evidence, or make determinations of credibility at the summary

judgment stage.  *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).

In considering a motion for summary judgment under Rule 56, a court must draw all

reasonable inferences in the light most favorable to the nonmoving party.  *Jacobs v. N.C. Admin.

Off. Of the Cts.*, 780 F.3d 565 n.1 (4th Cir. 2015).  The court "scrutinizes" each party's case "to

determine whether the [party] has proffered sufficient proof, in the form of admissible evidence,

that could carry the burden of proof of his claim at trial."  *Mitchell v. Data Gen. Corp.*, 12 F.3d

1310, 1315-16 (4th Cir. 1993).  A nonmovant, to defeat a motion for summary judgment

supported by affidavits, "may not rest upon the mere allegations or denials of his pleading, but

---

[4]  The court has omitted internal quotation marks, alterations, or citations here and throughout
this opinion, unless otherwise noted.

must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Detailed factual allegations in a verified, *pro se* complaint, if based on personal knowledge, may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams*, 952 F.2d at 823.

Malvo cannot defeat Defendants' properly supported summary judgment motion, however, with mere groundless generalizations or speculation. *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) ("Mere speculation by the non-moving party cannot create a genuine issue of material fact."). A plaintiff cannot use a response to a motion for summary judgment to amend or correct the complaint challenged by the motion for summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

### III.    DISCUSSION

#### A.  Retaliation

An official action motivated by retaliation for the plaintiff's exercise of a constitutionally protected right can violate the First Amendment, even if the act, when taken for a different reason, might have been legitimate. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977). However, merely conclusory allegations of retaliation cannot suffice to state any constitutional violation actionable claim under § 1983. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). In addition, courts must treat an inmate's claim of retaliation by prison officials "with skepticism because [e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). To succeed on a § 1983 retaliation claim, a plaintiff "must allege that (1) he engaged in conduct protected under the First Amendment, (2) the defendant took some action

that adversely affected the plaintiff's First Amendment rights, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)).

### 1. Defendants Collins

Malvo fails to present facts specific enough to meet the first element in the retaliation analysis. Namely, that Malvo engaged in protected First Amendment conduct. While it is well-settled that an inmate has a First Amendment constitutional right to be free from retaliation for filing grievances, *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017), there is no constitutional right to access and read restricted security documents. "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Id*.

In his affidavit, Defendant Collins states "Post Orders are restricted policies for staff only. These documents contain sensitive security information regarding staffing duties and responsibilities for each security post in VADOC facilities… Possession of these documents could create potential security risks to staff and inmates" and "[o]perating procedure … provides that 'Post Orders must not be visible or accessible to offenders.'" He further explains that "[p]ossessing security items such as a Post Order is a 100 series charge under [Operating Procedure] 861.1, *Inmate Discipline*. Collins' Aff. ¶5.

Malvo does not deny accessing the security documents. In fact, it is clear from his complaint and the corresponding evidence he submitted in support of this lawsuit, that Malvo read and accessed these restricted documents. Malvo not only cites to Operating Procedure 401.1 Security Post Order: Protective Custody several times in his Complaint, but also in the copies of the grievances he submitted with his Complaint. Dkt. 1. The Court draws a reasonable inference from Malvo's own submission that he read and accessed these restricted documents, which is contrary to his status as a prisoner. Further, both Defendants' Collins and Thornsberry in their sworn affidavit state that "[s]urveillance video showed that inmate Makdessi and Malvo has accessed the restricted documents." Collins Aff. ¶4, Thornsberry Aff. ¶4. While the video footage that shows Makdessi and Malvo accessing the restricted documents has not been provided to this Court, the fact that Malvo accessed the restricted documents is undisputed. Certainly, in a maximum security prison such as Red Onion, protecting the integrity of law enforcement sensitive or restricted documents in the interest of security is a legitimate penological objective and falls outside activity protected by the First Amendment.

However, even if Malvo engaged in protected activity,[5] a review of the unchallenged, unbiased video footage that underlies the entirety of the retaliation claim against Collins blatantly contradicts Malvo's version, which "is so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[W]hen a video quite clearly contradicts the version of the story told by [the plaintiff] … so that no

---

[5] Protected activity includes, for example, filing lawsuits. However, during this time period, Malvo had no pending lawsuits in the Western District of Virginia or anywhere else in the United States. Malvo's fellow inmate, Adib Makdessi, had several cases pending in the Western District of Virginia during this timeframe. Makdessi also filed a lawsuit against Defendant Collins for the events in the June 21, 2022 incident. The lawsuit was filed on January 23, 2023 and dismissed by summary judgment order on October 8, 2024. *Makdessi v. Collins*, No. 7:23-cv-00049, 2024 WL 4441746 (W.D.Va. Oct. 8, 2024).

reasonable jury could believe it, a court should not adopt that version of facts for the purposes of

ruling on a motion for summary judgment." *Simmons v. Whitaker*, 106 F.4th 379, 385 (4th Cir.

2024). "Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's

factual assertions if the video 'blatantly' contradicts the nonmovant's position." *Id*.

Malvo alleges various versions of the supposed assault with more conclusions than

factual support. Malvo alleges that Defendant Collins assaulted Makdessi "by slamming him in

the wall while he was handcuffed" which amounted to clear "retaliation, intimidation and

coercion" such that it adversely affected Malvo's First Amendment rights.  Dkt. 1. He further

contends that Collins repeatedly slammed Makdessi into the wall, cursed at him and then

dragged Makdessi to another pod.  *Id*.  Malvo mentions several times video footage that

"show[s] that between 12:30-1pm on 6/21/22 UM L. Collins assaulted Makdessi by slamming

him into the wall while he was handcuffed."  ROSP 22-REG-00177, Dkt 1.

For his part, Collins denies assaulting Makdessi and threatening or intimidating Malvo.

On the day of the incident, Collins explains that "[s]urveillance video showed that inmates Adib

Makdessi and Malvo had accessed the restricted documents" and that "on June 21, 2022,

Makdessi and Malvo were restrained, removed from their cells in C-6 and escorted to the C-6

vestibule."  Dkt. 85.  He further states that Malvo and Makdessi were removed from their cells so

that security staff could search each of the inmates' cells for the restricted documents.  While in

the vestibule, Makdessi was handcuffed in the front because of a medical order and Malvo was

handcuffed behind his back.  Upon entering the vestibule, Collins observed Malvo and Makdessi

standing close to one another and Makdessi "doing something with his hands."  *Id*.  Collins "told

Makdessi to move away from Malvo because [Collins] was worried that since Makdessi was

handcuffed in the front and Malvo was handcuffed behind his back, Makdessi could use his arms

11

to swing or attack Malvo if he chose to do so." *Id*. Collins "walked to Makdessi and made

contact with [Collins'] hands on [Makdessi's] upper left arm. [Collins] maintained contact with

[Makdessi's] upper arm and shoulder, walked Makdessi to the wall and stood him against the

wall for about three seconds" and then exited the vestibule. As additional evidence, Collins

submitted the uncontroverted video footage, which was also part of Makdessi's lawsuit against

Collins for the exact same allegation. *Makdessi v. Collins, et al.*, No. 7:23cv49, 2024 WL

4441746 (W.D. Va. Oct. 8, 2024).

Without more, these different versions of events present material disputes of fact under

the summary judgment standard. However, unchallenged video footage of an event can

overcome such disputes. *Simmons*, 106 F.4th at 385. I have carefully reviewed the video

evidence regarding events that occurred on June 21, 2022, in the vestibule. The video shows

when Collins entered the vestibule on June 21, 2022, at 12:19:35, he immediately walked over to

hold Makdessi's left arm. Although there is no sound, Collins enters the vestibule, points at

Makdessi and appears to be directing him to move away from Malvo. The footage shows

Collins walking towards Makdessi, saying something, and grabbing Makdessi by the arm to

stand between Makdessi and Malvo. While holding Makdessi's arm, Collins appears to motion

to someone to enter the vestibule and I again observed Collins' mouth move. The camera's view

of the initial interactions is obscured somewhat by the metal detector for a few seconds, but the

footage does not depict any threatening or aggressive body language or movements by either

Collins or Makdessi. The video shows Collins placing one hand on Makdessi's shoulder and

another on Makdessi's arm. Collins then guides Makdessi at a slow pace to the side wall, away

from Malvo. Makdessi now has his back to Malvo and Collins is positioned in a way as to have

a line of sight on both inmates. At no point does Malvo's facial expressions show fear or

12

concern.  Collins holds Makdessi at the wall for a few seconds, seemingly waiting for someone

or something to occur, before walking with Makdessi out of the vestibule, leaving Malvo alone

in the room.  In short, the video footage in the record directly contradicts Malvo's claims that

Collins repeatedly slammed Makdessi against the wall in front of Malvo in an attempt to threaten

or intimidate him.  The video footage is also completely devoid of any body language or facial

expressions that show Malvo's fear or concern.  Nor are there any threatening or aggressive

movements by Collins towards Malvo.[6]

Furthermore, the alleged June 21, 2022, assault that Malvo claims was a retaliatory act pre-

date the grievances with regard to Collins.  As such, the very fact that Malvo filed not one, but

two separate grievances and continued to appeal following the alleged assault proves the

opposite of what Malvo claims: the alleged assault had no chilling effect on Malvo's desire to

file grievances.  While not dispositive, the continued filing of grievances following the alleged

retaliation can be considered some evidence as to whether the alleged conduct had a chilling

effect.  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir.

2005).  Defendants submitted Malvo's grievance record from February 1, 2022 to December 8,

2023.  According to that report, following the June 21, 2022 interaction giving rise to Malvo's

retaliation claim against Collins, Malvo indeed filed 14 additional unrelated grievances and

appeals, as well as this lawsuit over one year after the alleged occurrence.  The official number

of grievances could be higher in the event that Malvo filed any grievances that were not properly

submitted.  *See* Meade Aff. ¶13.  Nothing seems to have deterred Malvo from continuing to file

grievances with and against Red Onion staff.

---

[6] To the extent that Malvo is also claiming Collins' vague threat was an adverse action, Malvo
offers nothing more than conclusions.  Furthermore, an "officers' idle, verbal threats … are not
sufficiently adverse to support a § 1983 retaliation claim."  *Ferebee v. Manis*, No. 7:19cv00639,
2022 WL 897044, at *8 (W.D. Va. March 28, 2022).

With regard to the last element in the retaliation analysis, causation, without the first two elements, there is nothing to analyze.

Accordingly, having independently reviewed the video footage and the record as a whole, I conclude that that no rational trier of fact would find in favor of Malvo as to the retaliation claim against Collins, and accordingly, Collins is entitled to Summary Judgment as a matter of law.  Overall, the record reflects and Malvo does not dispute that Malvo's conduct precipitated the June 21, 2022 interaction with Collins, who, according to the evidence presented, reasonably reacted to what could be viewed as a security breach inside a super-maximum security prison. Malvo accessed and read restricted documents, knowing that the documents are restricted and inmates have no right to review or access those documents and leading the Court to the evidence presented does not create a material issue of fact as to whether Collins retaliated against Malvo. Stated differently, Malvo fails to come forward with sufficient facts to show a triable claim of retaliation against Collins. Accordingly, Defendant Collins' Motion for Summary Judgment as to retaliation is granted as a matter of law.

### 2. Defendant Thornsberry

Similarly, Malvo's retaliation claim against Thornsberry also fails.  As discussed above, prisoners have no First Amendment constitutional right to read and access restricted documents. On that issue alone, Thornsberry is entitled to Summary Judgment.

However, even assuming that Malvo has shown he participated in a protected activity, his conclusory allegations and naked assertions against Thornsberry are insufficient to overcome the threshold for proving an adverse action. Malvo alleges that Thornsberry adversely affected his constitutional rights when he turned off his body camera to threaten, along with Collins, Malvo's

life. Dkt. 1.[7] Malvo provides no specificity of the threats by Thornsberry or states clearly the threats on Malvo made by Thornsbury. Furthermore, an "officers' idle, verbal threats … are not sufficiently adverse to support a § 1983 retaliation claim." *Ferebee*, No. 7:19cv00639, 2022 WL 897044, at *8. To the extent that Malvo claims that Thornsberry threatened his life by placing him in a dirty shower for 3 ½ hours, Malvo offers no evidence to support that allegation. Thornsbury is entitled to summary judgment on this claim.

### a) Exhaustion of administrative remedies

Defendant Thornsberry asserts that Malvo failed to exhaust his administrative remedies regard the claim of being placed in a dirty shower stall for 3 ½ hours while security staff searched his cell for the restricted documents. I will address the exhaustion issue as an independent basis to dismiss this claim.

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted his available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, properly exhaust all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 740-741 (2001).

---

[7] Malvo also claims that Thornsberry placed him in a dirty shower in retaliation for reading and accessing restricted documents. Even though Malvo fails to state a retaliation claim, Defendant Thornsberry has raised the defense of failure to exhaust administrative remedies, which will be addressed in the following section.

*Thornsberry's Summary Judgment evidence – VADOC Grievance Procedures*

Operating Procedure (OP) 866.1 provides that procedure VADOC inmates must follow to comply with § 1997e(a) and exhaust their administrative remedies. Meade Aff. ¶4, Dkt. 87-4. All issues are grievable except disciplinary proceedings and matters outside the control of the VADOC. Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal/Written Complaint form[8] within fifteen days of the incident and submitting it to prison staff. He should receive a written response on the bottom of the form within fifteen days, to allow him to initiate the formal grievance procedure by filing a Regular Grievance, with the Informal/Written Complaint form or any other relevant documentation attached. The filing of an Informal/Written Complaint does not satisfy the exhaustion requirement under § 1997e(a). If the inmate is dissatisfied with the staff response to the Informal/Written Complaint, or fifteen days have passed without a staff response, the inmate may submit a Regular Grievance.

A Regular Grievance must be filed within thirty days of the occurrence about which the inmate complains. It should only address one issue, and if multiple issues are presented, responding officials will only address one issue. If a Regular Grievance does not comply with the filing requirements of OP 866.1, it will be rejected at intake and returned to the inmate within two working days from the date of receipt. The respondent will note on the back of the form the reason for rejection and how to remedy any problems if feasible so that the inmate can correct the issue and resubmit the Regular Grievance. If the inmate disagrees with the intake decision, he has five days to appeal that decision to the Regional Ombudsman. However, such an appeal

---

[8] OP 866.1 refers to this stage of the procedure as the Informal Complaint Process. Therefore, the Court will refer to the filing as an Informal/Written Complaint. This informal portion of the grievance process also includes making a verbal complaint that is not at issue in this case.

does not satisfy the exhaustion requirement, because the inmate could resubmit his Regular Grievance with corrections.

Once a Regular Grievance is accepted at intake, the warden or his designee will investigate the complaint and send the inmate a Level I response.  If the responding official determines the grievance to be unfounded, the inmate has five days to submit the Regular Grievance and attachments on appeal to Level II, to an appropriate VADOC official such as the Regional Administrator or other administrator, depending on subject matter.  In most cases, this Level II review is the final available level of appeal.  For full exhaustion, the inmate must submit the claim via an Informal/Written Complaint, then in a Regular Grievance, and then through all levels of appeal available in OP 866.1.

*Malvo's Administrative Remedy Records*

C. Meade, the previous Grievance Coordinator at Red Onion and current Regional Ombudsman in the Western Region for VADOC, states that review of Malvo's grievance document file at Red Onion reflects that he did not fully exhaust available remedy procedures against Defendant Thornsberry for placing Malvo in a dirty shower.  Meade Aff. ¶17.  In an Informal/Written Complaint dated June 23, 2022, Malvo complained that "UM Collins and Sgt. Thornsberry pulled [Malvo] from his cell and brought him to the office.   He alleges that Sgt. Thornsberry turned off his body camera and threatened to beat him up if [Malvo] didn't give [UM Collins] his Security Post Order.  [Malvo] further alleged he was one of two prisoners singled out for retaliation; Sgt. Thornsberry locked [Malvo] in the dirty shower for hours." Meade Aff. ¶15, Dkt. 87-4.  On June 24, 2022, staff member, Major King responded, stating that Unit Manager Collins and Sgt. Thornsberry denied threatening Malvo at any time during the conversation.  Major King further explained that if security material is left in the common area, it

is Malvo's responsibility not to disturb it, further noting that possession of security material could result in a disciplinary charge, which was explained to Malvo.  Meade Aff. ¶15, ROSP-22-INF-01389, Dkt. No. 87-4.

On June 29, 2022, Malvo filed a Regular Grievance (ROSP-22-REG-00177) stating that Sgt. Thornsberry purposefully turned off his body camera in order to circumvent policy and hide that he and UM Collins threatened his life.  Malvo alleged the cameras would show that UM Collins assaulted Makdessi by slamming him into the wall while he was handcuffed.  He claimed retaliation, intimidation and coercion as a result of the assault.  However, nowhere in the regular Grievance does Malvo mention being placed in a dirty shower.  Evidence provided by both Malvo and the Defendants show that Malvo appealed the response to ROSP-22-REG-00177.  In his response to Defendant's Motion for Summary Judgment, Malvo offers as proof that ROSP-22-INF-01389 was date stamped as "Received Back Sept. 27, 2022 Regional Office."  Dkt. 92. Malvo concludes that "[t]his means that [Malvo] disagreed with the Level I decision … and appealed to the Regional Ombudsman," without providing more information.  *Id*.

A review of OP 866.1, however, contradicts Malvo's conclusion and tends to support Defendant Thornsberry's failure to exhaust argument.  An inmate must follow the grievance procedure to fully exhaust administrative remedies for judicial review purposes.  Here, Malvo filed an informal complaint[9] (ROSP-22-INF-01389) on June 23, 2022 which charges that Thornsberry placed him in a dirty shower.  Accordingly, Malvo has shown that he did file an informal/written complaint.  Major King responded on June 24, 2022 and Malvo filed a regular grievance, ROSP-22-REG-00177, on June 29, 2022.

---

[9] The Court notes that per OP 866.1, an inmate has the option to file a verbal complaint and if he/she is unsatisfied with the outcome, the next step is a written or informal complaint.  As Malvo did not file a verbal complaint, the first step in his circumstance would be to file an informal/written complaint.

However, the Regular Grievance did not include a charge that Thornsberry placed him in a dirty shower.  OP 866.1 requires that "[a] completed *Regular Grievance* … should contain a single grievable issue … [and b]e identical to and limited to the issue submitted on the *Written Complaint*."  Dkt. 87-4, OP 866.1, III(B)(1).  It appears that Malvo attached the informal complaint to the Regular Grievance, but OP 866.1 provides informal complaints can be submitted as supporting documentation for the regular grievance, but that only the information in the Regular Grievance will be reviewed and adjudicated.  The issue Malvo presented in his Regular Grievance (ROSP-22-REG-00177) did not concern Thornsberry placing him in a dirty shower, but rather, Malvo contends that Thornsberry created the opportunity for Collins or both Collins and Thornsberry to threaten Malvo's life by turning off his body worn camera. Malvo failed to raise the issue of being placed in a dirty shower as required by OP 866.1.

I conclude that Malvo failed to present facts from which a reasonable factfinder could conclude that he exhausted his administrative remedies before filing this lawsuit. Therefore, his retaliation claim that Thornsberry placed him in a dirty shower is barred under § 1997e(a) for failure to exhaust administrative remedies and must be dismissed.  Because the Court finds no evidence that Malvo could now exhaust administrative remedies as to this claim, the Court will dismiss it with prejudice.

### 3.  Defendant Taylor

Malvo asserts that Defendant Taylor "threatened to get [Malvo] for contacting SIU on UM L. Collins and Sgt. Thornsberry" regarding the alleged June 21, 2022 assault on Inmate Makdessi and, on August 13, 2022, in retaliation, Defendant Taylor issued a "bogus 200 series Refusing to work charge."  Dkt. 1.  Malvo further alleges that the "bogus charge" was issued 10 days prior to Malvo's parole hearing, which resulted in Malvo's parole being denied.  *Id*.

19

It is well-settled that prison officials may not retaliate against an inmate for making or filing a grievance. *Booker*, 855 F.3d at 541 (finding that inmates have "First Amendment right to be free from retaliation for filing a grievance"). In speaking to the SIU regarding the alleged assault, Malvo has presented facts to satisfy the first prong of the retaliation analysis, specifically, exercising a constitutional right. Defendant Taylor does not dispute that Malvo has a First Amendment right to file grievances. Taylor Aff. ¶7.

However, the second and third prongs of a retaliation analysis are fatal to Malvo's claim against Defendant Taylor. Namely, that of an adverse action that affected Malvo's First Amendment right and a causal relationship between the protected activity and the defendant's conduct.

The second, adverse action element of the retaliation standard is objective. Specifically, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). A plaintiff's continued exercise of his rights in the wake of the alleged retaliatory conduct "provides some evidence" whether that conduct tended to "chill First Amendment activity," but such evidence alone is "not dispositive" of this objective element of the analysis. *Id*. The filing of a false disciplinary action against a prisoner can satisfy the second element of a retaliation claim. *Booker v. S.C. Dep't of Corrections*, 583 F. App'x 43, 44 (4th Cir. 2014) (unpublished) (concluding that bringing false disciplinary charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights").

As to the second prong, Malvo alleges that Taylor took two adverse actions against him — threatening to "get Malvo" for reporting Defendants Collins and Thornsberry to the Special

Investigations Unit and issuing on August 13, 2022, a "bogus charge" for refusing to work.  Dkt.

1.  First, an "officers' idle, verbal threats … are not sufficiently adverse to support a § 1983

retaliation claim."  *Ferebee*, No. 7:19cv00639, 2022 WL 897044, at *8; *Ofori v. Fleming*, No.

7:20-CV-00345, 2021 WL 4462922, at *10 (W.D. Va. Sept. 29, 2021) (finding that a prison

official's threat that plaintiff "would 'regret it later' is an insufficiently adverse action to support

a retaliation claim, in part because it is such a vague threat."); *Hayes v. T. Dahlke*, 976 F.3d 259,

273 (2d 2020) ("[i]t is well-settled that '[i]nsulting or disrespectful comments directed at an

inmate generally do not rise' to the level of a constitutional violation, and 'that prisoners may be

required to tolerate more than average citizens, before a retaliatory action taken against them is

considered adverse.'"); *Murray v. Smithbower*, No. 21-2156, 2023 WL 5378839, FN4 (3rd Cir.

August 23, 2023) (finding that isolated incident where prison official cursed at inmate was

insufficiently adverse to support a retaliation claim.)

Second, Malvo's conclusory and naked assertions Defendant Taylor filed a pretextual

disciplinary charge on August 13, 2022, fall short of an adverse action required under the

retaliation analysis.  It is undisputed that Malvo continued to file grievances following the

"bogus" charge, a fact, while not dispositive by itself, tends to show under these circumstances

that the "bogus" charge did not deter Malvo from continuing to file grievances.  Furthermore,

Malvo did not suffer any infringement on his constitutional rights.  "Where there is no

impairment of the plaintiff's rights, there is no need for protection provided by a cause of action

for retaliation.  Thus, a showing of adversity is essential to any retaliation claim." *American Civ.

Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993).  Defendant Taylor issued

a 200 series charge against Malvo for refusal to work on August 13, 2022.  Taylor Aff. ¶4.

Malvo submitted an informal complaint on August 16, 2022, claiming that he was sick that day

and did not respond to a call for work.  Collins Aff. ¶11, Dkt. 87-2.  That charge was later investigated and dismissed as a mistake, well before Malvo's parole hearing.  Collins Aff. ¶11, Taylor Aff. ¶4, Dkt. 87-2.

The evidence submitted does not support Malvo's assertion that the disciplinary charge had a negative effect on the outcome of the parole hearing.  The Virginia Parole Board decision letter dated August 30, 2022, states "[t]he Board…considered a number of factors, including, but not limited to, whether your release would be compatible with public safety and the mutual interests of society … sentencing; … facts and circumstances of the offense(s)…" among others. The Board denied Malvo's parole primarily because (1) Malvo was a risk to the community, (2) the circumstances of his offenses were serious, (3) Malvo should serve more of his sentence prior to release on parole, (4) release would diminish the seriousness of the crime and (5) considering Malvo's offense and institutional records, supported the decision.  Dkt. 1-1, 87-2.  Furthermore, according to publicly available information, the Virginia Parole Board again denied Malvo's parole in August 2025 for similar reasons that it listed in 2022.  *Cf. Parole Decisions for August 2022, with Reasons*, available at https://vpb.virginia.gov/media/tbfl44kt/vpb-decisions-aug22.pdf, *archived at* https://perma.cc/YPB7-RSPJ, (considering Malvo's offense and institutional records, the Board concludes that Malvo should serve more of his sentence before being paroled; release at this time would diminish seriousness of crime; serious nature and circumstances of his offenses; the Board concluded that Malvo should serve more of his sentence prior to release on parole; and the Board considered Malvo to be a risk to the community.) *with Parole Decisions for August 2025, with Reasons*, available at https://vpb.virginia.gov/media/2tgptbur/vpb-decisions-aug-2025.pdf, *archived at* https://perma.cc/S3BL-XNLT, (finding that Malvo needs further participation in institutional

22

work and/or educational programs to indicate his positive progression towards re-entry into society; serious nature and circumstances of his offenses; the Board concluded that Malvo should serve more of his sentence prior to release on parole; the Board considered Malvo to be a risk to the community; release at this time would diminish seriousness of crime; Malvo needs to show a longer period of stable adjustment; Crimes committed - Homicide-Capital, Homicide-Capital, Homicide-Capital; History of violence; Malvo's record of institutional infractions indicates a disregard for rules and that Malvo is not ready to conform to society; and poor institutional adjustment (for example, motivation/attitude, unfavorable reports, lack of program involvement, etc.)).

However, assuming *arguendo* that Malvo does somehow overcome the first two prongs of the retaliation analysis, Malvo cannot overcome the causation prong.  To prove causation, Malvo must show that his "protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action."  *Martin v. Duffy*, 977 F.3d 294, 300 (4th Cir. 2020).  This requires that Malvo must, at a minimum, show that the Defendant had knowledge of the protected activity and that "there was some degree of temporal proximity" between the protected activity and adverse act.  Once the plaintiff can show the causal relationship, the burden then shifts to the defendants to prove in the absence of the protected activity, the outcome would have been the same.  *Martin*, 977 F.3d at 299.

Malvo claims on August 13, 2022, Defendant Taylor issued a 200 series charge in retaliation for speaking to SIU concerning the alleged June 21, 2022, assault on Makdessi. However, Malvo presents no evidence that Taylor was aware of Malvo's discussion with SIU, other than Malvo's bald assertion that Taylor allegedly threatened to get back at Malvo for reporting Collins and Thornsberry to SIU.  Even if Taylor knew, "[k]nowledge of protected First

Amendment activity alone 'does not establish a causal connection' between the protected activity and the adverse action." *Hodges v. Meletis*, 109 F. 4th 252, 262 (4th Cir. 2024). Furthermore, Malvo does not dispute that he did not refuse to work on August 13, 2022, and Malvo filed a complaint after his refusal to work claiming that he was sick on that particular day. Thereafter, the complaint was promptly investigated and dismissed.

In addition, Malvo claims that the Makdessi assault occurred on June 21, 2022. Taylor did not issue a charge against Malvo until August 13, 2022, nearly a month after the alleged assault and supposed conversation with SIU. While "temporal proximity alone can create the inference of causation," the Fourth Circuit has made it clear that the temporal proximity must be "very close" because "a lengthy time lapse between the defendant learning of the protected speech and the defendant taking the allegedly retaliatory action negates any inference that a causal connection exist between the two." *Id*.

Lastly, Malvo provides no facts to prove that any of the Defendants, let alone Taylor specifically, knew of Malvo's parole hearing and issued the charge in retaliation. The fact that the charge was not only investigated, but also dismissed suggests Defendants did not act in bad faith against Malvo. Based on the totality of the evidence before me, it is likely that Taylor would have issued the 200 series charge regardless. Mainly, because at bottom, Malvo refused to work when called. Nothing in the record indicates that Malvo was specifically singled out on that particular day for anything other than he refused to work. Malvo has also failed to show that any of the defendants had any actual knowledge of the date of his parole hearing prior to issuing the charge.

After reviewing the record in its entirety, I conclude that Defendant Taylor's Motion for Summary Judgment must be granted.

**B. Supervisor liability**

Malvo also contends that Defendants' Collins, Thornsberry and White have supervisor liability for the retaliatory actions of Defendants Collins and Thornsberry against Malvo and that Defendants White and Collins have supervisor liability for Defendant Taylor's retaliatory act against Malvo. Malvo failed to allege sufficient facts to state a claim of supervisor liability and accordingly, the Defendants are entitled to Summary Judgment as a matter of law.

It is well settled that supervisory officials cannot be held vicariously liable under § 1983 for the actions of subordinate employees. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. "Put differently, 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 677). Thus, "a complaint must contain specific allegations of each individual's conduct and state of mind." *King*, 76 F.4th at 269.

As discussed at length above, because Malvo has failed to allege retaliation as to any of the Defendants, for similar reasons, he cannot prevail on his claims of supervisory liability. With regard to Defendants Collins and Thornsberry, not only was there no retaliation, there was no assault, and Malvo's conclusory and speculative assertions are nothing more than mere groundless generalizations. Moreover, Malvo's more than 50 page lawsuit cannot overcome the indisputable video evidence, which patently contradicts his version of the underlying retaliation claim.

As to White, other than reviewing and signing off on the response to some of Malvo's grievances, no facts are provided to specify how White's individual conduct and state of mind negatively impacted Malvo's First Amendment rights.  To the contrary, nothing in the record reflects that Malvo was ever denied access to the grievance process or that White ever interfered with Malvo's exercise of his constitutional rights.

Accordingly, I find that Malvo has not stated a plausible constitutional claim against any Defendant for retaliation.  I also find no supervisor liability claim against any defendant.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (requiring showing a causal link between supervisor's alleged action or inaction and constitutional injury suffered by the plaintiff).

## IV.    CONCLUSION

For the reasons stated, the court concludes that the Defendants' Summary Judgment Motions are granted.  A separate order will be entered.

The clerk will send a copy of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendants.

Enter: July 15, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge

26